COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Powell and Senior Judge Clements


THOMAS COPELAND

                                                    MEMORANDUM OPINION[*]
v.      Record No. 0615-09-1                              PER CURIAM
                                                         OCTOBER 6, 2009
NEWPORT NEWS
  DEPARTMENT OF HUMAN SERVICES


            FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                          H. Vincent Conway, Jr., Judge

            (Jeffrey C. Rountree, on brief), for appellant.  Appellant submitting
            on brief.

            (Robert E. Pealo, Assistant City Attorney; Veryl Wells Scott,
            Guardian *ad litem* for the minor children; Wells Scott, P.C., on brief),
            for appellee.  Appellee and Guardian *ad litem* submitting on brief.


        Thomas Copeland (father) appeals from a decision terminating his parental rights to his two

children.  Father argues that the trial court erred in finding that there was sufficient evidence to

terminate his parental rights to his children.  Upon reviewing the record and briefs of the parties,

we affirm the decision of the trial court.

                                         BACKGROUND

        We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax County Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

So viewed, the evidence proved that on July 9, 2006, the Newport News Department of Human Services (the Department) took custody of father's two children.[1] The children, their father, their mother, Elizabeth McGee, and mother's other two children were homeless.[2] Prior to becoming homeless, they had been moving from hotel to hotel. When the Department took custody of the children, they were wearing dirty clothes and had poor hygiene. The family had no means of washing themselves or their clothes, and they had no food.

The Department's initial goal was to return the children home, provided father had safe and stable housing, took parenting classes, ensured that the children had safe, adult supervision at all times, addressed any mental health issues that he may have had, maintained contact with the Department and the children, participated in family counseling, and completed a parenting capacity assessment and followed the recommendations.

On August 31, 2006, the Department returned the children to father's home for a trial home placement. The Department arranged for in-home counseling services for the family.

Father saw Nadia L. Boyd, Psy. D., for a psychological, substance abuse, and parenting capacity assessment. Boyd recommended that father remain open to periodic home studies and supervision by the Department, participate in parenting education, participate in family therapy, and participate in individualized outpatient therapy.

In August 2007, the Department removed the children from the home for a second time. The parents had been unable to maintain stable housing, and the children's mother was abusing drugs. The Department also received a complaint that the children were wandering around the

---

[1] At the time of the first removal, the children were two years old and ten months old.

[2] Elizabeth McGee is the mother of Copeland's children, and she had two additional children living with them. The other children were five years old and three years old at the time of the initial removal.

apartment complex without adult supervision because they were knocking on neighbors' doors to ask for food and money.

Upon removal, the Department discovered that father's oldest child and mother's oldest two children had burn marks about the size of nickels on their shoulders and backs. Mother told the social worker that the babysitter was responsible for burning the children; however, father told the social worker that the children had been burned accidentally by a cigarette.

In addition, the foster care mother reported that father's oldest child and mother's oldest two children exhibited sexualized behaviors. Mother explained that there was a doorknob missing in their home, and the children probably saw their roommate having sexual intercourse with his girlfriend. Father also said that the children might have seen something in the household by watching other people.

Father failed to complete the services offered by the Department. He could not maintain stable housing. He did not complete a parenting class, nor did he participate in individualized therapy. He participated in in-home therapy, but not family therapy.

The trial court terminated his parental rights, and father timely noted his appeal.[3]

ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania County Dep't of Social Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

---

[3] The trial court also terminated mother's parental rights to her children, and she noted an appeal. McGee v. Newport News Dep't of Human Servs., Record No. 0552-09-1.

The trial court terminated father's parental rights based on Code § 16.1-283(C)(2).[4] Father argues that the evidence was insufficient to terminate his parental rights because he was working on many of the Department's requirements. He obtained a parenting capacity assessment and was employed. He testified that he completed a parenting course; however, he could not provide any documentation. He visited with and inquired about his children. Despite these efforts, father failed to maintain stable housing, failed to provide proof that he completed a parenting class, and did not participate in family therapy or individualized therapy.

> [S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services.

Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005) (quoting City of Newport News Dep't of Soc. Servs.v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

Father told the trial court that he needed an additional three months to be prepared to care for his children. The trial court noted that father had made some efforts, but the efforts were not enough. The trial court commended father's work ethic, but explained that his good effort did not translate "directly into fulfilling the requirements of improving his role as a parent, as a family unit." Father asked for additional time; however, the Department had been involved with

---

[4] Code § 16.1-283(C)(2) states that a person's parental rights may be terminated if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

the family since 2006 when they removed the children for the first time. The main issue that led to the removal in 2006, lack of housing, remained a problem at the time of the termination hearing, over two years later.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

The trial court explained that the children were aging and needed "proper medical care and developmental care and stability," but after two years, father still had not resolved the housing issue. Father did not show signs of improvement to offer the children the stability that they needed.

The evidence was sufficient to terminate father's parental rights.

CONCLUSION

For the foregoing reasons, we affirm the trial court's rulings.

Affirmed.